UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRADLEY GEORGE WALTER,
        Plaintiff,

v.
                    19-CV-522-HKS

ANDREW SAUL, Acting
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER

    Plaintiff, Bradley George Walter, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for supplemental security income ("SSI") under Title XVI the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c). Dkt. No. 10.

    Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 6, 8. For the reasons that follow, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 8) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 6) is DENIED.

## BACKGROUND

On October 22, 2015, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability beginning on December 11, 2013, due to: Depression; Anxiety; Back Issues; Inability to stand/walk for more than 15 minutes; limited ability to lift much/difficulty with daily chores; Rhabdomylosis; Broken Collar Bone (9/2014); Concussion; Possible Brain Damage; and Asthma. Tr.[1] 136-37, 147-156. On February 9, 2016, Plaintiff's claims were denied by the SSA at the initial level and he requested review. Tr. 57-67, 71-75, 83-85. On February 12, 2018, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Stephen Cordovani ("the ALJ"). Tr. 28-56. On March 23, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act. Tr. 12-27. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on February 20, 2019. Tr. 1-10. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] References to "Tr." are to the administrative record in this matter. Dkt. No. 4.

substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since October 22, 2015, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff has the following severe impairment: Asthma. *Id.* Also at step two, the ALJ found Plaintiff has non-severe impairments including: gastroesophageal reflux disease ("GERD"); fractured collar bone; self-reported history of frontal lobe infarct; rhabdomyolysis; chronic back pain; depression; and anxiety. Tr. 18. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 19.

Next, the ALJ determined Plaintiff retained the RFC to perform medium work[2] except that Plaintiff should have no exposure to extreme heat, cold, wetness or humidity, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants. Tr. 19-22.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 22. At step five the ALJ concluded, based on the VE's testimony in consideration of Plaintiff's age (51 and closely approaching advanced age), education, work experience, and RFC, that Plaintiff was capable of performing other work existing in significant numbers in the national economy. *Id.* Specifically, the ALJ found Plaintiff could perform the following jobs: "Sandwich Maker;" "Dining Room Attendant;" and "Laundry Laborer." Tr. 23. Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from October 22, 2015, through March 28, 2018. Tr. 23-24.

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 416.967(c).

5

**II.     Analysis**

Plaintiff argues that remand is warranted because the ALJ erred in determining the severity of his impairments at step two of the sequential disability analysis and ultimately relied on his own lay opinion in assessing Plaintiff's Physical RFC.  Dkt. No. 6 at 10, 15.  The Commissioner contends the ALJ reasonably assessed the severity of Plaintiff's impairments at step two and the ALJ's Physical RFC finding is supported by the evidence.  Dkt. No. 8 at 11,19.  This Court agrees with the Commissioner for the reasons that follow.

**A.  The ALJ's Step Two findings are supported by substantial evidence.**

Plaintiff argues the ALJ erred in assessing Plaintiff's GERD, status post fractured clavicle and lumbar pain as non-severe impairments at step two.  Dkt. No. 6 at 11.

"The standard for a finding of severity under Step Two of the sequential analysis is de minimis and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  However, "[a] medically determinable impairment is not necessarily severe, and where such impairments do not interfere with a claimant's ability to work, the ALJ should find the impairments non-severe."  *Botten v. Astrue*, 2010 SL114929, at *6 (E.D. Va. 2010) (citations omitted).  The claimant bears the burden of demonstrating a medically severe impairment or combination of impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (citing 42 U.S.C. § 423(d)(5)(A), instructing that a claimant "shall not be considered to be

under a disability unless he furnishes such medical and other evidence of the existence thereof…."). "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, 2011 WL 6255372, at *3 (N.D.N.Y. 2011) (quotation omitted).

An impairment is not considered "severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521. The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and unusual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). A finding of "not severe" should be made if the medical evidence establishes only a "slight abnormality" which would have "no more than a minimal effect on an individual's ability to work." Social Security Ruling 85-28, 1985 WL 56856 at *3 (S.S.A. 1985). Ultimately, the ALJ must base the RFC assessment on both severe and non-severe impairments. See 20 C.F.R. § 404.1545 ("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.").

Here, the ALJ considered all of Plaintiff's medically determinable impairments at step two and concluded that Plaintiff's asthma constituted a severe impairment, noting that the medically determinable impairment significantly limited Plaintiff's ability to perform basic work activities as required by SSR 85-28.  Tr. 17.  He also concluded that Plaintiff's GERD, fractured collar bone, history of frontal lobe infarct, rhabdomyolysis, chronic back pain, depression, and anxiety are non-severe impairments, because they do not cause more than minimal limitations on Plaintiff's ability to perform basic work activities. Tr. 17-18.

Plaintiff does not challenge the ALJ's assessment of his history of frontal lobe infarct as non-severe, where the ALJ found Plaintiff's treatment records indicated that he required no treatment for that condition because he had no deficits.  Tr. 17-18 (referencing exhibit C1F).  Plaintiff also does not challenge the ALJ's assessment of his rhabdomyolysis as non-severe, which the ALJ found was related to acute alcohol intoxication and dehydration, again as reflected in Plaintiff's treatment records.  Tr. 18 (referencing exhibit C1F).

The ALJ assessed Plaintiff's GERD as not severe because it is controlled with medication.  Tr. 17.  In support of his conclusion, the ALJ referenced Plaintiff's medical records (Exhibit C5F) with Donald Gullickson, D.O. ("Dr. Gullickson").  *Id.*  Dr. Gullickson noted in January 2015 that Plaintiff's GERD is "well controlled with Prilosec" and that Plaintiff denied abdominal pain, change in bowel habits, constipation, diarrhea, and other gastrointestinal symptoms.  Tr. 245. Subsequent examination records from

8

April and August of 2015; and May and July of 2017 reflect Plaintiff's GERD status remained stable.  Tr. 248, 251, 254, 292.  Furthermore, upon examination of Plaintiff in February 2016, consultative examiner Hongbiao Liu, M.D. ("Dr. Liu") noted that Plaintiff's GERD was stable and attributed no functional limitations to Plaintiff's GERD.  Tr. 273, 276.   Substantial evidence supports the ALJ's determination that Plaintiff's GERD was not severe where the ALJ referenced medical evidence that demonstrates that the impairment was controlled with medication throughout the relevant period.  *See Monguer v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (holding impairment was not severe where it improved from treatment).

      Next, the ALJ acknowledged that Plaintiff had fractured his collar bone, however, he observed that the bone healed appropriately without residual limitation, therefore he concluded the impairment was not severe.  Tr. 17.  The ALJ referenced Plaintiff's medical records in support of his conclusion, including notes from Dr. Gullickson's examination of Plaintiff in January 2015, where Plaintiff reported aggravation of right clavicular pain, an occasional pulsating pain when lying down, that he attributed to increased movement and function.  Tr. 20 (referencing Tr. 245).  The ALJ also noted that Dr. Liu reviewed X-Ray images of Plaintiff's right clavicle, which displayed a healed displaced fracture of the midportion of the clavicle, with the impression: status post fracture of the clavicle.  Tr. 22 (referencing Tr. 277).  Neither Dr. Gullickson nor Dr. Liu attributed any functional limitations to Plaintiff's status post fracture of the right clavicle.  Given the medical evidence referenced by the ALJ in

support of his determination that Plaintiff's status post fracture of the right clavicle is not severe, this Court finds the determination is supported by substantial evidence.

Lastly, the ALJ assessed Plaintiff's chronic back pain as non-severe, where his only chiropractic treatment records were from 2014 (before the application date) and found that Plaintiff did not continue treatment (outside of pain management) during any relevant period. Tr. 18. Specifically, the ALJ observed that Plaintiff did not consult with any orthopedic or spine specialist, has not engaged in physical therapy, or any conservative treatment other than pain medication since 2014. *Id.* The ALJ also incorporated a thorough analysis of Plaintiff's treatment records regarding his chronic back pain in evaluating Plaintiff's Physical RFC. *See Woodmancy v. Colvin*, 577 Fed. App'x. 72, 74 at n.1 (2d Cir. 2014) ("[w]e identify no error warranting remand because the ALJ did identify severe impairments at step two, so [the claimant's] claim proceeded through the sequential evaluation process, in which all of [the claimant's] ailments were part of the analysis.").

Accordingly, the ALJ did not commit reversible error in declining to find that Plaintiff's GERD, status post fracture of the right clavicle, and chronic back pain were severe impairments.

**B. The ALJ's Physical RFC is supported by substantial evidence.**

Plaintiff also argues that the ALJ relied on his own lay opinion in assessing Plaintiff's Physical RFC, by rejecting every record medical opinion. Dkt. No. 6 at 1. The

10

Commissioner contends the ALJ's Physical RFC determination that Plaintiff is capable of performing a range of Medium work is supported by substantial evidence. Dkt. No. 8 at 11. This Court agrees with the Commissioner again, for the reasons that follow.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018 (quotation omitted). However, an ALJ's conclusion need not "perfectly correspond with any of the opinion of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

In this matter, the ALJ expressly referenced medical opinions authored by Dr. Gullickson and Dr. Liu in evaluating Plaintiff's Physical RFC.

**1. Dr. Gullickson**

In June 2016, Dr. Gullickson completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" (a New York State Office of Temporary and Disability Assistance form)

on behalf of Plaintiff, indicating he had been Plaintiff's examining physician for one year. Tr. 281, 282.  Under the "Reasons for Referral" section, Dr. Gullickson noted:  "Client states that:  He may have medical issues that do not allow him to work at this time."  Tr. 281.  Dr. Gullickson listed "low back pain" as Plaintiff's sole medical condition and did not include any information regarding prognosis or treatment recommendations (including prescribed medications).  *Id.*  Under the date of original diagnosis section, the doctor indicated that Plaintiff had been diagnosed with low back pain "prior to our practice" and opined the condition was not permanent but would last for more than one year.  *Id.*  In the check-box section of the form regarding functional limitations (no evidence of limitations; moderately limited; or very limited), the doctor indicated Plaintiff would have moderate limitations with all physical functioning including:  walking, standing, sitting, lifting, carrying, pushing, pulling, bending, seeing, hearing, speaking, using hands and stairs or other climbing.  Tr. 282.  The doctor further opined that Plaintiff would be unable to stand, walk or sit for more than one to two hours at a time.  *Id.*

Under Second Circuit precedent and the applicable Social Security Regulations, an ALJ must follow a two-step procedure in evaluating the medical opinion of a treating physician.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  First, the ALJ determines whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  *Id.*  If these criteria are satisfied, then the opinion is "entitled to controlling weight."  *Id.*  If not, then the ALJ proceeds to the

12

second step, determining "how much weight, if any, to give" the opinion. *Id.* Specifically, at step two the ALJ must consider the following factors: "(1)the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96 (citing *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir.2013) (per curiam) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir.2008) (citing 20 C.F.R. § 404.1527(c)(2)))). The ALJ must provide "good reasons" regarding the weight assigned to a treating physician's medical opinion at both steps. *Id.* at 96. (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.2004) (per curiam) (quoting 20 C.F.R. § 404.1527(c)(2))).

The ALJ accorded Dr. Gullickson's opinion "limited weight," explaining that the limitations identified are not consistent with the record or with the extent of Plaintiff's treatment. Tr. 22. The ALJ acknowledged that Plaintiff treated with Dr. Gullickson from January 2015 through May 2017 for follow up of chronic conditions including asthma, GERD, anxiety, allergies, back pain, muscle strain and depression. Tr. 20. The ALJ referenced Plaintiff's treatment records with Dr. Gullickson throughout the relevant period, which consisted of four examinations in 2015 (January (Tr. 231-33), April (Tr. 234-36), August (Tr. 237-240), and November (Tr. 267)) and several examinations in May 2017 (Tr. 462-472). Tr. 20-21.

The ALJ explained that the reliability of Dr. Gullickson's opinion was undermined by Plaintiff's medical record, especially where the doctor assessed

13

moderate limitations regarding Plaintiff's ability to: hear, speak, see and use his hands which are notably unassociated with any of Plaintiff's medically determinable impairments. Tr. 21-22. The ALJ noted that the Dr. Gullickson attributed all of the assessed limitations to Plaintiff's low back pain, which had been diagnosed prior to his course of pain management treatment with the doctor; and for which he received no conservative treatment other than pain medication. Tr. 21. For example, Plaintiff did not consult with any orthopedic or spine specialist and did not engage in physical therapy. Tr. 22.

Furthermore, Dr. Gullickson's treatment notes, did not support the limitations he assessed. Upon examination with Dr. Gullickson in January 2015, for sinus congestion symptoms, Plaintiff' reported pain in his right lower back, and that a chiropractor had informed him he had lesions. Tr. 231. He also reported that he occasionally takes Advil for relief of pain when his Hydrocodones wear off. *Id.* Dr. Gullickson noted Plaintiff had normal gait for age and moved without difficulty with no pain on palpation of thoracic and lumbar spine, but bilateral lumbar pain with straight leg thigh flexion. Tr. 232. He prescribed 100 mg of Gabapentin for Plaintiff's chronic lower back pain, noting that Plaintiff requested a higher dose or change to Oxycodone, which was declined. Tr. 232. Follow-up examinations in April, August, and November of 2015 do not include any new complaints or developments regarding Plaintiff's low back pain, aside from Plaintiff's continued prescriptions for Gabapentin and Hydrocodone-Acetaminophen Tablets. Dr. Gullickson continued to note Plaintiff's normal gait and movement without difficulty. Tr. 234-240, 267. Upon examination in May 1, 2017, Dr.

14

Gullickson observed that Plaintiff 's low back pain had been mostly well-controlled, however, Plaintiff reported increased pain after sitting or standing for long periods of time but that his medications reduce the pain.  Tr. 469.

Lastly, the ALJ observed that Dr. Gullickson ultimately discharged Plaintiff from his treatment in May 2017, after Plaintiff's toxicology screening samples tested positive for cocaine.  Tr. 21, 463.  The ALJ noted that Dr. Gullickson advised Plaintiff to seek drug rehabilitation but that Plaintiff refused and indicated he had been obtaining pain medication off the street.  Tr. 21, 463.

It is well established that an ALJ may give the treating physician's opinion less weight when the opinion is internally inconsistent or inconsistent with other substantial evidence in the record.  *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (summary order) ("Although a treating physician's assessment is typically given more weight than other examiners' assessments, internal inconsistencies, and the conflicting opinions of other examining physicians, where supported by evidence in the record, can constitute substantial evidence to support not according the treating physician's opinion controlling weight, as well as good reasons to attribute only limited weight to that opinion.") (citation omitted); *see also* 20 C.F.R. § 404.1527 (c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we give to that opinion.").  It is also appropriate to afford less weight to an opinion that is not thoroughly explained or supported by objective medical evidence.  *See* 20 C.F.R. § 404.1527 (c)(3) (explaining that the degree of weight given to a

medical opinion is affected by the amount of medical evidence and the quality of the explanation supporting the opinion). Here, the administrative record demonstrates that the ALJ's decision not to give controlling weight to Dr. Gullickson's opinion was proper considering the substantial evidence contradicting the doctor's assessment.

### 2. Dr. Liu

The ALJ also considered the medical opinion from consultative examiner Dr. Liu, which was based on an in-person examination of Plaintiff in February 2016. Tr. 21. Upon examination, Plaintiff reported chronic whole-body joint pain stemming from a history of at least five motor vehicle accidents between 1980 to 2014. Tr. 273. Plaintiff also reported a pain level of 7/8 out of 10, with constant sharp pressure aggravated by cold weather; and believed he could lift ten pounds, walk one block, change position after five minutes while sitting or standing. *Id.* Dr. Liu noted Plaintiff's normal gait, moderate difficulty with walking on heels and toes and 55% squat ability, due to low back pain. Tr. 274. He also reviewed X-Rays of Plaintiff's right clavicle and lumbar spine which showed a healed displaced fracture of the midportion of the right clavicle and no significant bony abnormality in the lumbar spine. Tr. 276-78. Dr. Liu observed Plaintiff's lumbar spine flexion/extension at 75 degrees; lateral flexion 20 degrees bilaterally; and rotary movement 20 degrees bilaterally; with full range of motion of shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. Tr. 275. He diagnosed Plaintiff with history of asthma, history of chronic pain, anxiety and depression, and GERD. *Id.* Lastly, Dr. Liu opined that Plaintiff had mild to moderate

limitation for prolonged walking, bending, and kneeling; and should avoid dust and other irritating factors to limit asthma attacks. *Id.*

The ALJ explained that he accorded "limited weight" to Dr. Liu's opinion because it is based on a single examination record and Plaintiff's subjective reports; and the opinion is inconsistent with the treatment record and Plaintiff's admitted activity level. Tr. 22. Here, the ALJ noted that Plaintiff reported independence in cooking, cleaning and shopping; with no difficulty caring for himself. Tr. 21. Furthermore, Plaintiff's subjective complaints upon examination with Dr. Liu, specifically, complaints of chronic whole-body joint pain are belied not only by his examination records with Dr. Gullickson (where he once reported low back pain and right clavicle pain) but also by Dr. Liu's examination findings where, aside from his lumbar spine, Plaintiff retained full range of motion of all of his joints. Tr. 275. This Court also notes that the physical RFC finding does incorporate the respiratory limitations assessed by Dr. Liu, in consideration of Plaintiff's asthma, which the ALJ determined was a severe impairment. Tr. 19.

Plaintiff insists that the ALJ relied on his own lay opinion because he discounted both of the medical opinions in the record, therefore leaving no medical opinion that supported the ALJ's RFC determination. Dkt. No. 6 at 15. Specifically, Plaintiff contests the ALJ's determination that he can perform the lifting and carrying associated with medium work. Id. at 17. Here, Dr. Gullickson opined Plaintiff would be moderately limited in his ability to lift and carry, while Dr. Liu assessed no limitations regarding Plaintiff's ability to lift and carry. As explained above, when presented with

conflicting evidence, the ALJ, as the trier of fact, has the duty to resolve that conflict. *Richardson*, 402 U.S. 389, 399, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).  Where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013) (summary order), a medical source statement or formal source opinion is not necessarily required. *See Id.*  Although we consider opinions from medical sources on issues such … [as a claimant's] residual functional capacity … the final responsibility for deciding [this] issue[] is reserved to the Commissioner."  20 C.F.R. § 1527(d)(2).

It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999).  Accordingly, this Court finds the ALJ did not commit reversible error in determining Plaintiff's Physical RFC.  The ALJ's evaluation of Plaintiff's medical records and his consideration of medical opinions from Dr. Gullickson and Dr. Liu, constitute substantial evidence in support of the physical RFC determination.  *See, Matta*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (concluding that an ALJ did not impermissibly rely on his own medical judgment because "he was entitled to weigh all of the evidence available to make [an RFC] finding that was consistent with the record as a whole").

## CONCLUSION

For these reasons, Defendant's Motion for Judgment on the Pleadings (Dkt. No. 8) is GRANTED.  Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 6) is DENIED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
            September 4, 2020

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**